# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,**<br><br>Plaintiff,<br><br>vs.<br><br>**ST. JUDE MEDICAL, INC.,**<br><br>Defendant. | CASE NO. 16-cv-06210-YGR |
| **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,**<br><br>Plaintiff,<br><br>vs.<br><br>**BOSTON SCIENTIFIC CORPORATION,**<br><br>Defendant. | CASE NO. 16-cv-6266-YGR<br><br>**ORDER DIRECTING AMENDMENT OF INFRINGEMENT CONTENTIONS IN RESOLUTION OF DISCOVERY DISPUTES; EXTENDING DEFENDANTS' PATENT L.R. 3-4 DOCUMENT PRODUCTION DEADLINE** |

In the above-captioned, related patent actions, defendants St. Jude Medical, Inc. ("SJM") and Boston Scientific Corporation ("BSC") have each raised objections to the Disclosure of Asserted Claims and Infringement Contentions (ICs) of plaintiff The Regents of the University of California ("the Regents"), and the parties have submitted joint discovery letters as required by this Court's Standing Order. (*See* SJM Dkt No. 49; BSC Dkt. No. 55.) The Court held a hearing and tutorial on May 2, 2017, in connection with these discovery disputes. The Court having considered the parties' joint submission and arguments, and good cause appearing, **ORDERS** that the Regents amend their ICs as stated herein.

**I.  APPLICABLE STANDARDS**

The Patent Local Rules of this District provide for a "'streamlined' mechanism to replace the 'series of interrogatories that defendants would likely have propounded' in its absence."

*FusionArc, Inc. v. Solidus Networks, Inc.*, No. C06-06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, No. C01-2079 VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002)). The rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).

Patent Local Rule 3-1 requires that a party claiming patent infringement serve a "Disclosure of Asserted Claims and Infringement Contentions" which identifies:

> 1. each claim of each patent allegedly infringed and the applicable statutory subsections of 35 U.S.C. §271 asserted;
> 2. each accused product, act, or other instrumentality of infringement of the opposing party, for each asserted claim, as specifically as possible.

Pat. L.R. 3-1(a), (b). Methods or processes must be identified by name. *Id.* at (b). Where the claim is practice of a method or process, what must be identified is the product, device, or apparatus which allegedly results in the practice of the patented method or process when used. *Id.* at (b).

Rule 3-1 also requires that the disclosures include a chart "identifying specifically where and how each limitation of each asserted claim is found" within each accused product, act, or instrumentality, including the identity of the structures, acts, or materials in the accused product, act, or instrumentality that perform the claimed function. Pat. L.R. 3-1(c). For claims of indirect infringement, the disclosures must identify the direct infringement and the "acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Pat. L.R. 3-1(d).

These rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case." *See DCG Sys. v. Checkpoint Tech., LLC*, No. C11-03729 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal quotation marks omitted). But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim. *Cf. FusionArc, Inc.*, 2007 WL 1052900, at *1.

## II. DISCUSSION

Here, the Regents allege indirect infringement, both contributory and induced, based upon the defendants' acts of marketing and selling devices that practice the patented method, and by defendants teaching others (the direct infringers) to perform the patented method. The question that arises is whether the required disclosures for an indirect infringement claim must include the level of specificity in their description of the underlying direct infringement as would be required where the action was for direct infringement, *i.e.*, identification of each accused product, device, or apparatus the (non-party) direct infringers use to practice the patented method.

In circumstances similar to those presented here, courts interpreting the interplay between Rule 3-1 subsections (b) and (d) have determined that the infringement contentions and claim chart for a claim of indirect infringement should identify the product names and model numbers, to the extent reasonably available. *See EON CorpIP Holding LLC v. Sprint Spectrum, L.P.*, No. C-12-01011 JST (EDL), 2014 WL 1022536, at *3-4 (N.D. Cal. Mar. 13, 2014) ("*EON Corp. I*") (indirect infringer entitled to notice of which of its own devices contribute to or induce infringement per Rule 3-1 (b), (d)); *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (plaintiff required to identify accused indirect infringer's products or groups of products carrying out the same function that were allegedly used in the underlying direct infringement with "as much specificity as possible with the information currently available to it[, b]ut is not obligated at this point to supply evidence to support its infringement theory."); *see also EON Corp IP Holdings LLC v. Apple Inc.*, No. 14-CV-05511-WHO, 2015 WL 4914984, at *8-9 (N.D. Cal. Aug. 17, 2015) (*EON Corp. II*) (identification of accused indirect infringers' products). Also, under similar circumstances, a party alleging indirect infringement has been required to chart out how its devices practice the alleged method on a claim-by-claim basis.

In the current iteration of the ICs for SJM, the chart for Claim 1 identifies several models of SJM products for each of the following categories:

(1) "ablation catheters;"

(2) "cardiac mapping systems;"

3

1      (3) "RF Ablation Generators;"

2      (4) "Diagnostic Mapping Catheters;" and

3      (5) "Introducer Sheaths."

(SJM Dkt. No. 49, Exh. 1 [SJM ICs] at Chart p. 2-3.) The chart indicates that the categories "include" these products, suggesting that there may be other model names and numbers within the categories that have not been specified. The chart for Claim 1 then sets forth a list of one representative product from each of the five categories,[1] and follows with brief descriptions, from SJM's marketing materials, of the functions of certain products in each of the categories.[2]

The ICs for BSC are similar. In the chart for Claim 1, the Regents identify certain BSC product names within each of the above categories. (BSC Dkt. No. 55, Exh. 1 [BSC ICs] at Chart p. 2.) The chart for Claim 1 then provides descriptions from BSC marketing materials of certain BSC catheters (Chilli, Intellinav, INTELLATIP MIFI™), all apparently ablation catheters, introducer sheaths (Zurpaz), and a general description of mapping systems and catheters. (BSC ICs at Chart p.3.)[3]

Under the circumstances here, given that the Regents base their claims not merely on the teaching of the patented method, but also on the sales and marketing of devices used to practice the patented method, the Regents must identify by model name and number those devices it contends are used in the direct infringement. It must identify all products of defendants it contends are so used, based upon the information reasonably available to it.

To comply with Rule 3-1(c), the Regents must chart which products marketed by SJM and BSC practice which claims of the patented method. To the extent that certain products are

---

[1] TactiCath (Category 1), EnSite Precision (Category 2), Advisor (Category 4), Ampere (Category 3), and Agilis (Category 5). (SJM ICs at Chart p. 3.)

[2] Category 1 (TactiCath and FlexAbility); Category 2 (EnSite Precision Cardiac Mapping System); Category 3 (1500T9-CP V.1.6 Cardiac Ablation Generator, Ampere, Nt2000ix); Category 5 (Agilis NxT Steerable Introducer); and a description generally ascribed to "looped Mapping Catheters" (presumably a subset of Category 4). (SJM ICs at Chart p. 3-4.)

[3] Unlike the SJM claim chart, the BSC chart for Claim 1 contains no functional descriptions of exemplar products within Category 3, "RF Ablation Generators."

4

properly grouped together by function, and that function is an element of the claim, the Regents may define the group once, identifying specifically which products are included within that group, and repeat it as appropriate. However, the Regents must set forth how each of the categories of products in the alleged "comprehensive system" or product suite of the defendants maps onto the claims of the patent, rather than stating in a general manner that all products in all categories collectively practice all elements of all claims, as the ICs presently read.

The Regents argue that their ICs, generally identifying categories or representative model names, are sufficient. They contend that "different models numbers of the representative products denote immaterial structural differences (such as diameters)" and are not required to be specifically identified or charted, citing *EON Corp II*, 2015 WL 4914984, at *7. It is true that a party claiming indirect infringement by the alleged infringer's acts of inducing third parties to practice a method claim need not accuse any products of the alleged infringer in order to state the predicate direct infringement. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (alleging indirect infringement in the absence of any accused products, where doctors were induced to correlate elevated homocysteine levels with cobalamin deficiencies). Likewise, the Regents are not required to name specific doctors alleged to infringe directly. *In re Bill of Lading*, 681 F.3d 1323, 1336 (Fed Cir. 2012). However, here, the claims of indirect infringement specifically rely on defendants' sales and marketing of their own products, and therefore rely on those products to establish the measure of damages. Under those circumstances, identification of the products used to carry out the direct infringement is necessary.

With respect to the induced infringement claim, the Court is not persuaded that the additional step of identifying the *structures* in the products that perform the claimed function is necessary. *Cf.* Pat. L.R. 3-1(c) ("including . . . the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function"). Nor is the Court persuaded, given the basis for the alleged induced infringement, that the Regents must chart *each* product against all elements of any asserted claim, since it is not aspects of the individual products that give rise to the direct infringement, but the use of a system or "suite" of certain products to carry out the patented method.

However, to the extent that the Regents have asserted contributory infringement based on allegations that specific products of SJM and BSC are "especially made or especially adapted" for an infringing use of the patented method, the Regents are required to chart out those products on a claim-by-claim basis consistent with Rule 3-1(c), identifying specifically how the product, or a component of the product, is adapted or designed for use in practicing the limitations of the asserted claim. *See EON Corp I*, 2014 WL 1022536, at *4 (accused indirect infringer entitled to notice as to which of its devices contribute to infringement); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (indirect infringement established by component specially adapted for use in the patented process and with no substantial non-infringing use).

### III. CONCLUSION

The Regents are **ORDERED** to serve amended infringement contentions as stated herein no later than **May 19, 2017**.

With respect Patent L.R. 3-4(a), the Court waives defendants' obligations to produce source code or technical schematics. Given the disclosure that the relevance of the accused devices relates to plaintiff's damages calculation, good faith compliance with Rule 3-4(a) may be achieved bearing in mind such limitation. The May 18, 2017 deadline for defendants' Rule 3-4 document production shall be extended to **June 1, 2017**.

This terminates Docket No. 49 in *Regents v. St. Jude Medical Inc.*, 16-cv-6201-YGR, and Docket No. 55 in *Regents v. Boston Scientific Corporation*, 16-cv-6266-YGR.

**IT IS SO ORDERED.**

Dated: May 5, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**